UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-62588-CIV-ALTMAN/Hunt

**EDGE SYSTEMS, LLC**,

    Plaintiff,

v.

**VENUS CONCEPT USA INC.**,

    Defendant.

_____/

## ORDER

**THIS MATTER** comes before the Court upon the Plaintiff's Claim Construction Brief [ECF No. 55]; the Defendant's Response in Opposition [ECF No. 57]; and the Plaintiff's Reply [ECF No. 60]. The Court held a hearing on May 24, 2019 (the "May 24th hearing"), at which the parties presented their oral arguments. The Court has carefully reviewed the parties' filings and arguments, the record, and the applicable law.

## THE FACTS

On October 26, 2018, the Plaintiff, Edge Systems, LLC ("Edge"), brought this action for injunctive relief and damages against the Defendant, Venus Concept USA Inc. ("Venus"). *See* Compl. [ECF No. 1].[1] Edge alleges that Venus has introduced into the marketplace a hydradermabrasion skin-treatment device that infringes on the following five Edge patents:

    1) U.S. Patent No. 7,789,886 ("the '886 Patent"), issued Sep. 7, 2010 [ECF No. 31-1];

    2) U.S. Patent No. 8,066,716 ("the '716 Patent"), issued Nov. 19, 2011 [ECF No. 31-2];

    3) U.S. Patent No. 8,337,513 ("the '513 Patent"), issued Dec. 25, 2012 [ECF No. 31-3];

---

[1] Edge filed its Amended Complaint on December 19, 2018. *See* [ECF No. 31].

4) U.S. Patent No. 9,468,464 ("the '464 Patent"), issued Oct. 18, 2016 [ECF No. 31-4]; and

5) U.S. Patent No. 9,775,646 ("the '646 Patent"), issued Oct. 3, 2017 [ECF No. 31-5].

*See* Am. Compl. at 2–11. As relevant here, the parties' dispute centers around the proper construction of several salient terms in these patents' claims.

## **THE LAW**

Resolving disputes over the construction of patent claims is a task left exclusively to the federal courts. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996). "The construction of claims is simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims." *Terlep v. Brinkmann Corp.*, 418 F.3d 1379, 1382 (Fed. Cir. 2005) (internal quotation marks omitted). "The purpose of claim construction is to give claim terms the meaning understood by a person of ordinary skill in the art at the time of invention." *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1358 (Fed. Cir. 2017). "[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy." *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

In construing claim terms, courts look first "to the language of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). And, because claims "do not stand alone," they "must be read in view of the specification, of which they are a part." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (internal quotation marks omitted); *see also* 35 U.S.C. § 112(b) ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the

invention."). "Usually, [the specification] is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582. But "there is a fine line between reading a claim *in light of* the written description [of the specification] and reading a limitation into the claim from the written description." *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312, 1321 (Fed. Cir. 2016). "When the claims leave little doubt as to what is intended, re-shaping the claims with material from the written description is clearly unwarranted." *Id.* at 1322.

Courts should also consider, if it is in evidence, a patent's prosecution history, which "consists of the complete record of the proceedings before the [Patent and Trademark Office] and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. "Yet because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* Finally, a court may use "extrinsic evidence" as a tool of claim construction—but always with the caveat that such evidence "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1319. "The sequence of steps used by the judge in consulting various sources is not important; what matters is for the court to attach the appropriate weight to be assigned to those sources in light of the statutes and policies that inform patent law." *Id.* at 1324.

## ANALYSIS

**I.    The '886 Patent**

1. "abrade"/"abrade the skin"/"abraded"

| Edge's Proposed Construction[2] | Venus' Proposed Construction |
|---|---|

---

[2] For purposes of this Order, the parties' "proposed constructions" are the constructions the parties proposed in their briefs. *See* Edge Br. [ECF No. 55] at 3–13; Venus Br. [ECF No. 57] at 5–17.

| | |
|---|---|
| Plain and ordinary meaning.  Alternatively, "wear away by friction"/"wear away the skin surface by friction"/"worn away by friction" | "removal of/removing surface layers of skin" |

The Court very much doubts that, without additional explanation, the average juror will readily understand the word "abrade." Accordingly, the Court declines Edge's invitation to construe "abrade" according to its "plain and ordinary meaning." Edge Br. at 3–4.

On the other hand, the Court finds unconvincing Venus' proposal to limit "abrade" only to instances in which multiple "layers of skin" are removed. *See* Venus Br. at 5–6. The '886 Patent's repeated reference to "abrading surface layers of the patient's epidermis," the "abrasion of the surface layers," and the "abrading [of] skin layers," [ECF No. 31-1] at 2, 13, 16, strongly suggests that the definition of "abrade" does not include "surface layers of skin." *Cf. Phillips*, 415 F.3d at 1314 (noting that the patent's use of the term "steel baffles . . . strongly implies that the term 'baffles' does not inherently mean objects made of steel"). Were it otherwise—that is, were the Court to construe the verb "abrade" to include the words "surface layers of skin"—the claims' inclusion of the additional modifiers (e.g. "surface layers" or "skin layers") would be nothing short of superfluous. This the Court may not—and will not—do. *See* Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 176 (2012) ("If a provision is susceptible of (1) a meaning that gives it an effect already achieved by another provision, or that deprives another provision of all independent effect, and (2) another meaning that leaves both provisions with some independent operation, the latter should be preferred."). The word "abrade," in sum, must mean something short of removing "surface layers of skin."

At the May 24th hearing, the parties approached agreement on a kind of middle ground for the word "abrade." Venus wanted the Court to define "abrade" as any "removal of the skin surface

by friction," *see* May 24, 2019 Hearing Tr. [ECF No. 70] ("Hearing Tr.") at 52, while Edge preferred "removal of *a portion* of the skin surface by friction." *Id.* (emphasis added). When the Court suggested its preference for Edge's construction, Venus agreed to a definition that would include Edge's "removal of a portion of the skin surface by friction," but only so long as "a portion" were further defined to mean something more than a *de minimis* amount of skin. *Id.* at 101–02. Edge then promptly agreed that the Court should provide the jury with an instructive footnote to this effect. *Id.* at 108. In this way, the parties reached full agreement on this term. Accordingly, the Court hereby construes "abrade" in accordance with the parties' agreement as follows: to "remove a portion of the skin surface by friction. Note that 'a portion' means more than a *de minimis* amount of skin."[3]

2. "abrasive structure"

| Edge's Proposed Construction | Venus' Proposed Construction |
|---|---|
| Plain and ordinary meaning. Alternatively, "a structure that abrades [wears away by friction]" | "part of the working surface that carries sharp edged apices in a rasp-like or sandpaper-like structure for abrading tissue. The abrasive structure on the working surface does not rotate relative to the longitudinal axis of the instrument body" |

The Court agrees with Edge that "a structure that abrades" is the most natural definition of "an abrasive structure." Unlike "abrade," the word "structure" is a relatively common noun, whose meaning the average juror is very likely to understand. And, in patent construction (as elsewhere), commonly used words should, as much as possible, be given their plain and ordinary meaning. *See Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999) ("[A] court must presume that the terms in the claim mean what they say, and, unless otherwise compelled, give

---

[3] The Court is willing, if the parties request it, to provide an additional, dictionary definition of "*de minimis*."

full effect to the ordinary and accustomed meaning of claim terms."). It is, therefore, unsurprising that, through the years, courts construing patent claims have frequently afforded the word "structure" its plain and ordinary meaning—without additional construction. *See, e.g.*, *Fractus, S.A. v. ZTE Corp.*, No. 2:17-CV-00561-JRG, 2018 WL 4282783, at *26–27 (E.D. Tex. Sept. 7, 2018); *Epistar Corp. v. Lowes Companies, Inc.*, 326 F. Supp. 3d 952, 974–75 (C.D. Cal. 2018); *Cosmo Techs. Ltd. v. Actavis Labs. FL, Inc.*, No. CV-15-164-LPS, 2016 WL 4697953, at *4 (D. Del. Sept. 7, 2016); *Coprecitec, S.L. v. Brinkmann Corp.*, No. 1:12-CV-1480-AT, 2013 WL 12061898, at *4 (N.D. Ga. Nov. 20, 2013).

Venus offers two arguments in support of its alternative construction. *First*, Venus asks the Court to import into this term a proposed limitation—"part of the working surface that carries sharp edged apices in a rasp-like or sandpaper-like structure for abrading tissue"—it transposes from the prosecution history of United States Patent No. 6,641,591 ("the '591 Patent") [ECF No. 55-9], which is the parent of the '886 Patent. *See* Venus Br. at 7–8. That prosecution history includes a letter from John H. Shadduck, the putative inventor,[4] to the PTO, in which the inventor advanced the following argument to distinguish a prior invention: "[T]he Applicant discloses an instrument with a working surface that carries sharp-edged apices in a rasp-like or sandpaper-like structure for abrading tissue and teaches away from the [prior art]." [ECF No. 57-2] at 60. The inventor's statement followed the PTO's rejection of an independent "Claim 1" for a skin-treatment system that included, *inter alia*, "a skin interface compris[ing] a plurality of projecting ridges with substantially sharp edges." *See id.* at 20. An inventor's statement during a patent's prosecution can, of course, affect the scope of that patent's claims and, under some circumstances, may be used to construe the claims contained in later patents—but only to the extent those patents

---

[4] Shadduck was apparently the inventor of both the '591 Patent and the five patents at issue here.

belong to the same family. *See Regents of Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929, 942–44 (Fed. Cir. 2013).

However alluring Venus' position might at first glance appear, it ignores the undisputed fact that the inventor subsequently amended his '591 Patent application and received approval from the PTO for *a new and broader* "Claim 1." *See* [ECF No. 55-9] at 15. This amendment makes all the difference here because, whereas the "skin interface" in the rejected Claim 1 comprised, as Venus points out, "a plurality of projecting ridges with substantially sharp edges," the "skin interface" in the amended Claim 1 includes "an abrading structure with substantially sharp edges for abrading tissue." *Id.* Put another way, the amended '591 Patent relegated the narrower phrase, "plurality of projecting ridges," together with the "apices" referenced in the inventor's statement to the PTO, to Claims 2 and 4, which are indisputably *dependent* of Claim 1. *See id.* (dependent Claims 2 and 4); *see generally* 35 U.S.C. § 112(d) (describing structure of claims in dependent forms). It is well-settled that "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is *not present* in the independent claim." *Phillips*, 415 F.3d at 1315 (emphasis added). Venus has done precious little to rebut this presumption. To the contrary, Venus' proposed construction would inappropriately read the dependent claims' limitations—viz. "apices" and "plurality of projecting ridges"[5]—into

---

[5] To the extent there is any substantive difference between the '591 Patent's use of "plurality of projecting ridges" and Venus' proposed "rasp-like or sandpaper-like structure," the former term is necessarily broader than the latter. After all, as the Court noted at oral argument, while sandpaper includes projecting ridges, it is but one variety of a surface composed of such ridges. Thus, Venus' proposed construction would inexplicably render the '591 Patent's independent Claim 1 *narrower* than its dependent Claim 2. *See Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1370 (Fed. Cir. 2016) (where a dependent claim has "no meaningful difference other than an added limitation" to an independent claim, "construing the independent claim to exclude material covered by the dependent claim would be inconsistent"). At the May 24th hearing, Venus could conjure no answer to this dispositive logical flaw in its argument. Hearing Tr. at 54–58.

7

independent Claim 1's definition of "abrading structure." This, it goes without saying, the Court may not do.

Indeed, Venus' construction would be particularly inappropriate here, where the limitation Venus proposes did not merely start out as a dependent claim, but rather was *purposely removed* from the independent claim and then relegated to the dependent claims prior to final approval. Under these circumstances, any definition of the independent claim that includes the limitations of the dependent claims would *both* (1) ignore the well-established presumption that dependent claims cannot circumscribe the ambit of independent claims and (2) disregard the obvious import of the '591 Patent's prosecution history. In sum, the Court rejects Venus' attempt to limit the definition of "abrading structure" in the '591 Patent—and, for the same reason, will not apply Venus' proposed limitation to the '886 Patent.

Venus' second argument delimits an "abrasive structure" to a structure that "does not rotate relative to the longitudinal axis of the instrument body." Venus Br. at 8–9. This proposed limitation stems from the inventor's unsuccessful attempt, during the prosecution of the '886 Patent, to amend his application to include this language in his first claim. *See* [ECF No. 55-10] at 3. The PTO rejected the inventor's proposed amendment, pursuant to 35 U.S.C. § 132(a), after it concluded that he had improperly introduced new matter into the invention's disclosure. [ECF No. 55-11] at 4. Notably, however, the inventor then *abandoned* the longitudinal-rotation language— the same language upon which Venus' second argument hinges—and, as a result, this language *appears nowhere* in the '886 Patent's finalized claims. *See* [ECF No. 31-1] at 16–17.

In a separate context, the Federal Circuit has rejected a party's efforts to cabin a patent's reach by importing into the claim a definition the patent's inventor had abandoned in the final

8

version of the patent. *See Mass. Inst. of Tech. v. Shire Pharm., Inc.*, 839 F.3d 1111 (Fed. Cir. 2016) ("*MIT*"). In doing so, the panel explained:

> MIT tried to narrow the application claims early in prosecution to exclude skin organ cells, but the examiner rejected the "non-skin" limitation . . . as new matter. MIT never again sought to limit the claims to exclude skin organ cells. Had the examiner actually agreed with MIT's arguments and allowed the proposed amendments, the claims could well have a different claim scope. But the examiner did not, and MIT took a different approach. Since claims to "vascularized organ tissue" were ultimately allowed over the prior art without the proposed "non-skin" amendment, it is difficult to infer that a skilled artisan would interpret other isolated statements by MIT during the course of the prosecution history as a clear and unmistakable disclaimer of claim scope.

*Id.* at 1120–21. As in *MIT*, "[h]ad the examiner actually agreed with [the inventor]'s arguments and allowed the proposed amendments, the claims could well have a different claim scope. But the examiner did not, and [the inventor] took a different approach." Accordingly, the Court eschews any qualification of "abrasive structure" that is premised on longitudinal non-rotation—a notion the inventor abandoned in the final version of the '886 Patent. The Court will therefore construe an "abrasive structure," in accordance with Edge's proposal, as a "structure that abrades."[6]

## II.    The '716 Patent

### 1. "abrading structure"

The parties' briefs agree that the construction of "abrading structure" in the '716 Patent should mirror the construction of "abrasive structure" in the '886 Patent. *See* Edge Br. at 6; Venus Br. at 10–11. Accordingly, the Court will construe an "abrading structure" in the '716 Patent to mean a "structure that abrades."

---

[6] Of course, the word "abrades" will be defined in accordance with the construction set forth in Section I.1., *supra*.

9

2. "abrade"

The Court likewise agrees with both parties that "abrade" should have the same construction in the '716 Patent as it has in the '886 Patent. *See* Edge Br. at 6; Venus Br. at 11.

3. "selectively abrade"

| Edge's Proposed Construction | Venus' Proposed Construction |
|---|---|
| Plain and ordinary meaning. | "to remove surface skin layers using an abrading structure within a range of angles selected by the user" |
| Alternatively, "abrade [wear away by friction] a selected area" | |

Again, Venus urges the Court to apply a limitation it draws from a patent's prosecution history. *See* Venus Br. at 11–12. The key difference here is that Venus' suggestion—that the word "selectively" refers to the user's ability to choose from among a "range of angles"—comes, not from the inventor, but from *the patent examiner's* description of the prior art. During the prosecution history of the '716 Patent, the examiner described a structure contained in a prior invention as constituting "an 'abrading structure' configured to selectively abrade skin" because it allowed the user to abrade skin "at [a] selective angle." *See* [ECF No. 57-4] at 183.[7] Venus, then, extracts from an examiner's statement *about a prior invention* its suggestion that the term "selectively abrade" *in this patent* means "remove surface skin layers using an abrading structure within a range of angles selected by the user."

But Venus reads too much into the examiner's statement. To be sure, "[s]tatements about a claim term made by an examiner during prosecution of an application may be evidence of how

---

[7] Notably, however, in the same paragraph, the examiner concluded that "an 'abrading structure' only requires a structure, which some how [sic] serves the purpose of abrading a skin." [ECF No. 57-4] at 183. This statement, it goes without saying, eviscerates Venus' proposed definition of "abrasive structure." *See* Section I.2., *supra*. And Venus never explains why the Court should use this examiner's statements for one purpose (i.e., where it is helpful to Venus), but not another (where it is damaging to Venus). As they say, what's good for the goose …

one of skill in the art understood the term at the time the application was filed." *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005). But the *Salazar* opinion, upon which Venus' argument heavily relies, involved an examiner's interpretation of a patent's claims in the Statement of Reasons for Allowance of *that patent*, *id.* at 1343—and not, as here, an examiner's isolated remark *about an entirely different product*. Far more probative here is the language and structure of the '716 Patent itself. And, unfortunately for Venus, the words "angle" or "angles" appear nowhere in the '716 Patent's claims or its specifications. The Court will not contravene the express language of these claims on the basis of an isolated statement from the patent's prosecution history, which "often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317.

In any case, even were the Court inclined to afford the examiner's remark about a different product *some* weight, Venus' proposed interpretation of *this patent's* claim terms would not necessarily follow. After all, there is no reason to believe that the employment of selective angles is the *only* way for a user to "selectively abrade" skin. To list but a few obvious (and contrary) examples, a user may "selectively abrade" skin by choosing *where* to abrade, *how much* to abrade, or *whether* to abrade at all. Without any indication, either in the language of the '716 Patent's claims or in the text of its specifications that "selectively" somehow refers to "angles," the Court is unpersuaded that Venus' proposed "range of angles" limitation belongs in the construction of "selectively abrade" at all.

On the other hand, the Court agrees with Edge that "[t]he term 'selectively' indicates that the abrading structure is configured in a way so that the user can choose whether to abrade an area of skin or not." Reply Br. [ECF No. 60] at 11. As Edge points out, the federal courts have routinely construed the word "selectively" in patent claims to refer to "the choice" of *whether* to operate a

device. *See Sudden Valley Supply, LLC v. Ziegmann*, No. 4:13-CV-00053-JCH, 2014 WL 902875, at *12–13 (E.D. Mo. Mar. 7, 2014); *Nomadix, Inc. v. Second Rule LLC*, No. CV-07-01946-DDP, 2008 WL 6024094, at *19–21 (C.D. Cal. Oct. 15, 2008); *Ampex Corp. v. Eastman Kodak Co.*, 460 F. Supp. 2d 541, 557–58 (D. Del. 2006); *McNulty v. Taser Int'l Inc.*, 217 F. Supp. 2d 1058, 1066–68 (C.D. Cal. 2002). And, although by no means dispositive, this common construction of the adverb "selectively" comports with standard dictionary definitions of that term. *See Selectively*, MERRIAM-WEBSTER ONLINE DICTIONARY (2019), http://www.merriam-webster.com/dictionary/selectively (defining "selective" as "of, relating to, or characterized by selection"). Accordingly, the Court will construe "selectively abrade" to mean "to choose whether to abrade."

4. "non-abrasive outer periphery"

| Edge's Proposed Construction | Venus' Proposed Construction |
|---|---|
| Plain and ordinary meaning. Alternatively, "an outer border that does not abrade [wear away by friction]" | "outer edge that does not have sharp-edged apices in a rasp-like or sandpaper-like structure in order to minimize the removal of surface skin layers as it touches the skin" |

At the May 24th hearing, the parties agreed that the Court should construe "non-abrasive outer periphery" as "outer boundary that does not abrade." *See* Hearing Tr. at 29, 72, 81. The Court will therefore adopt the parties' agreement.

### III. The '513 Patent

1. "sharp edge"

| Edge's Proposed Construction | Venus' Proposed Construction |
|---|---|
| "edge sufficiently sharp to abrade skin" | "a thin edge suitable for or capable of cutting surface layers of skin" |

The Court finds neither party's proposed construction of this term entirely convincing. As Venus points out, even dull or sharp objects are capable of abrading skin cells—a fact that strongly undermines Edge's proposed construction. *See* Venus Br. at 15. On the other hand, the Court has already rejected Venus' request that the word "abrade" be limited only to abrasions that remove multiple "surface layers" of skin, *see* Section I.1., *supra*, and the Court will not allow Venus to reintroduce that concept by other means here.

Rather than point the Court to any language in either the text or prosecution history of the '513 Patent, Venus relies on a non-technical, dictionary definition of "sharp." *See* [ECF No. 57-9] at 5. Although dictionaries are permissible tools for claim construction, they (along with other forms of extrinsic evidence) are "less reliable than the patent and its prosecution history in determining how to read claim terms." *Phillips*, 415 F.3d at 1317–18. And, notably, Venus' suggestion that a "sharp edge" must be "thin" has absolutely no foundation in the text of the '513 Patent itself. The Court will not use extrinsic evidence to rewrite the patent's claims.

In the end, the Court concludes that ordinary jurors will have little difficulty determining whether or not an "edge" is "sharp"—or, to be more precise, whether something does, or does not, constitute a "sharp edge." At the May 24th hearing, the parties agreed to the following additional description, which the parties hope will clarify the meaning of "sharp edge": "a sharp edge is one that is not necessarily sharp enough to cut the skin." Hearing Tr. at 75-76. The Court agrees both that this additional definition would be helpful to the jurors and that it remains faithful to the scope of the '513 Patent's specifications, which unmistakably impart an intent to rub away skin—though not, as the parties made plain, in the way that a knife might slice a tomato. *See* [ECF No. 31-3] at 13–16. The Court will thus construe a "sharp edge" to mean an "edge that is sharp, but not necessarily sharp enough to cut the skin."

2. "configured to abrade skin"

| Edge's Proposed Construction | Venus' Proposed Construction |
|---|---|
| Plain and ordinary meaning.<br><br>Alternatively, "arranged in a way to abrade skin [wear skin away by friction]" | "configured to remove the surface layers of the skin" |

Although the parties' briefs identify "configured to abrade skin" as a disputed claim term, they present no additional argument on a proposed construction for the word "configure," *See* Edge Br. at 10; Venus Br. at 15[8]—an omission that works to forfeit any rights they might have had to complain about the Court's construction. *See Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) ("[S]imply stating that an issue exists, without further argument or discussion," is not sufficient to preserve a party's right to contest that issue on appeal). Because the Court sees no reason to apply any special construction to the word "configured"—and because the parties have provided none—that word (no less than the word "skin") will be afforded its plain and ordinary meaning.[9]

3. "configured to selectively abrade skin"

| Edge's Proposed Construction | Venus' Proposed Construction |
|---|---|
| Plain and ordinary meaning.<br><br>Alternatively, "arranged in a way to abrade [wear away by friction] a selected area of skin" | "configured to remove surface skin layers using an abrading structure within a range of angles selected by the user" |

---

[8] Again, the Court will define "abrade" in accordance with the construction set out in Section I.1., *supra*.

[9] Indeed, the parties seem to have agreed with this result. After all, Edge asks the Court to give "configured" its plain and ordinary meaning, while Venus proposes that the Court use the word "configured" without further elaboration—a minor distinction that, for all practical purposes, appears devoid of any significance.

14

Here, again, the parties note a dispute over "configured to selectively abrade skin," but offer no new arguments in support of their separate constructions. *Id.* The Court will therefore give "configured" its plain and ordinary meaning and will construe "selectively abrade" as it did in the context of the '716 Patent.

## IV. The '464 Patent

1. "activating the vacuum source facilitates delivery . . . "

Because the parties agree that the Court should construe this term according to its plain and ordinary meaning, *see* Edge Br. at 10; *accord* Venus Br. at 16, the Court will adopt the parties' proposal.

2. "selectively providing a volume"

| Edge's Proposed Construction | Venus' Proposed Construction |
|---|---|
| "providing a volume to the selected skin surface of the subject" | "adjusting the pressure level of the vacuum with a trigger or similar valve that influences the amount of treatment media that is delivered to the skin" |

This penultimate dispute arises from the phrase "selectively providing a volume of the treatment media to the skin surface of the subject," which appears twice in the '464 Patent's claims. [ECF No. 31-4] at 18–19 (Claims 1 and 12). Edge's proposal comports with the Court's construction of the word "selectively" in "selectively abrade." Specifically, Edge's construction recognizes that the word "selectively" refers, as before, to the user's ability to choose *whether to* (as pertinent here) "provide a volume." And, because the adverb "selectively" can directly modify the verb "providing," but not the noun "volume," the phrase "selectively provide a volume" is most naturally read as allowing a user to choose whether *to provide* the treatment media—but not *how much* of it to provide. *See* Scalia & Garner, *supra*, at 140 ("[D]rafters . . . are presumed to be grammatical in their compositions. They are *not* presumed to be unlettered. Judges rightly presume

15

. . . that legislators understand subject-verb agreement, noun-pronoun concord, the difference between the nominative and accusative cases, and the principles of correct English word-choice."); *accord Nielsen v. Preap*, 139 S. Ct. 954, 964 (2019) (recognizing the well-trodden grammatical proposition that "an adverb cannot modify a noun").

In response, Venus proposes to import into the claims' meaning some narrowing language from one of the '464 Patent's preferred embodiments, *see* Venus Br. at 16–17—an effort that is, for several reasons, misplaced. First, as a general matter, the Federal Circuit has cautioned courts against employing this methodology:

> [A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments. In particular, we have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment. That is not just because section 112 of the Patent Act requires that the claims themselves set forth the limits of the patent grant, but also because persons of ordinary skill in the art rarely would confine their definitions of terms to the exact representations depicted in the embodiments.

*Phillips*, 415 F.3d at 1323 (citations omitted).

And this makes sense. After all, the inventor was unlikely, *ex ante*, to have circumscribed the intended scope of his invention to include only the precise contours of the '464 Patent's limited embodiments. To the contrary, it seems far more likely that he produced the embodiments "to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so." *Phillips*, 415 F.3d at 1323; *accord* [ECF No. 31-4] at 18 (col. 8:19–32) (discussing potential for modifications to preferred embodiments and noting that patent's claims "are intended to cover and embrace any and all such modifications, with the limits only of the true purview, spirit and scope of the invention").

Worse, Venus' proposed construction—which includes pressure levels, triggers, and valves—comes from an embodiment that has nothing to do with providing a volume of "treatment

media" (the only issue here). Instead, Venus extracted those terms from the description of the inventor's Type "A" Skin Resurfacing System, which involves introducing "abrasive crystals" to a patient's skin. *See* [ECF No. 31-4] at 16 (col. 4:47–58). The Type "A" embodiment at no point mentions treatment media, which is rather the subject of the inventor's Type "B" Skin Resurfacing System. *See id.* at 18 (col. 7:27). The '464 Patent helpfully explains that the latter system "differs greatly from the Type 'A' embodiment in the mechanism of action that abrades the skin since the Type 'B' system *uses a fluid media* plus an abrading structure on the skin interface." *Id.* (col. 7:30–33) (emphasis added).

Finally—and perhaps most notably—the inventor's decision to include references to pressure levels, triggers, and valves in the Type "A" embodiment, but to exclude those same words from the Type "B" embodiment, fatally undermines Venus' contention that the '464 Patent, *as a whole*, necessarily includes an "adjust[ment of] the pressure level of the vacuum with a trigger or similar valve." *See* Venus Br. at 16–17. *Cf.* Scalia & Garner, *supra*, at 107–08 (describing the canon of "*expressio unius est exclusio alterius*").

In the end, then, the language of the '464 Patent's specification calls for a construction of "selectively" that is at least similar to the definition of "selectively abrade" from the '716 Patent. Accordingly, the Court will construe "selectively providing a volume" to mean "choosing whether to provide a volume."

## V. The '646 Patent

1. "hydration treatment media"

| Edge's Proposed Construction | Venus' Proposed Construction |
|---|---|
| Plain and ordinary meaning. | "fluid that hydrates the skin" |
| Alternatively, "media that is capable of hydrating the skin" | |

Although it initially sought a construction that accorded with the plain and ordinary meaning of "hydration treatment media," Edge has agreed to a substitution of the word "fluid" for "media." Hearing Tr. at 36–37. Venus, in turn, has no objection to the construction "hydration treatment fluid." *Id.* at 45. The Court accordingly adopts this agreed construction.

## Conclusion

For the foregoing reasons, the Court hereby construes the disputed claim terms as follows:

| Term | Court's Construction |
| --- | --- |
| "abrade"/"abrade the skin"/"abraded" ('886 Patent) | "remove a portion of the skin surface by friction. Note that 'a portion' means more than a *de minimis* amount of skin. |
| "abrasive structure" ('886 Patent) | "structure that abrades" |
| "abrading structure" ('716 Patent) | "structure that abrades" |
| "abrade" ('716 Patent) | "remove a portion of the skin surface by friction. Note that 'a portion' means more than a *de minimis* amount of skin. |
| "selectively abrade" ('716 Patent) | "choose whether to abrade" |
| "non-abrasive outer periphery" ('716 Patent) | "outer boundary that does not abrade" |
| "sharp edge" ('513 Patent) | "edge that is sharp, but not necessarily sharp enough to cut the skin" |
| "configured to abrade skin" ('513 Patent) | "configured to abrade skin" |
| "configured to selectively abrade skin" ('513 Patent) | "configured to selectively abrade skin" |
| "activating the vacuum source facilitates delivery" ('464 Patent) | "activating the vacuum source facilitates delivery" |
| "selectively providing a volume" ('464 Patent) | "choosing whether to provide a volume" |
| "hydration treatment media" ('646 Patent) | "hydration treatment fluid" |

**DONE AND ORDERED** in Fort Lauderdale, Florida this 19th day of August 2019.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record